The counsel for Mason filed the following petition for a re-hearing.

The counsel for Mason in these cases'conceiving that the decision herein is a departure from both principle and precedent, to the ruin of their client, respectfully ask of the court a reconsideration of the same.
*412 This court in their written opinion herein have re^ cognized the main principle upon which Mason’s counsel did most sanguinely predicate success to their client in the decision. This principle as laid down by the court is, that “when a covenantee has obtained a judg-raeni fair1 y, for a breach of covenant, for the legal tide to land, which has resulted from the negligence, and delinquency, of the covenantee only, and the chancellor had not gotten possession of the cause, before the judgment was obtained, the party holding it should not be deprived of its benefits, nor be compelled to accept of a legal title.” But the court farther say, “this comprehensive rule of equity does not apply to this case. The failure to convey the title on the 25th December, 1818, is not attributable, exclusively, if at all, to ate negligence or improper delinquencey of Chambers. He was able to convey; he was willing to convey. He was not bound by his contract to convey, before the consideration was paid or tendered.”
If the facts and law, were considered by the counsel to be here correctly set down, they would certainly have no cause of complaint, and consider the decision as sanctioned by the plainest principles of law, equity, and natural justice; if uncontrolled, and un-ouched by previous adjudication concerning this veiy controversy. For'whére a part of the case that has been settled by this court heretofore, is brought to bear against Mason, it is presumed equally fair, that so far as the legal character and effects of his contract with Chambers has been also settled by the competent tribunal, the principles of the decision of this controversy, must be considered as so far settled and closed between the parties, in whatever shape, or at whatever time, the same may be again brought before a judicial forum. Believing as counsel must do, that this court, has solely in view to administer justice bctv»een parties, who may be before it, according to law, it would seem unnecessary, to state, that the most fearful evil in any government, claiming to be well ordered, is arbitrary discretion. Yet it may not be wholly unuseful or unapt to remark, that discretion with good men, is most likely to become arbitrary, when directed to an apparently just end. For in such cases the character of the functionary, and the end in view, seem to paraiize resistance to the dc- *413 viation; though destructive of the harmony and safety of the law. This max'm, however, still stands as a wani ng beacon, s ra est stroilu^ubijiis cs-tvrigum aut inceriu /¡.” The safe guidance of principle and approved preceden', may sometimes occasion, seemingly, injustice or hardship, bu. t :c general good resulting from an adherence io rule, mast he siill paramount. The counsel will therefore proceed to suggest some views of the facts and law of the case, wh-c.i seem not to have occurred to the court in full force, or were overlooked by it.
.And 1st. As to the construction of the contract of the parties. This court say s now, as befoi e noticed, that Chambers “was not bound to convey, before the consideration (agreed to be paid) was paid or tendered."’ If this question, were now open, it is strenuously but respectfully urged by Mason’s counsel, that this construction of the contract between these parties is not law, either upon principle or precedent, and it needs no authority to prove., that the construction of the contract, must be the same, both in chancery and at law. It has indeed grown in.oa maxim that the rules of construction are the same in both courts, III El. Com. 435. Reeves, Dom. Relations, 390. And it is also a maxim, that chancery follows the law. it is true, that the powers and jurisdiction of the former extend further than the latter. Lord Holt, than whom an abler common law .judge never sat on the English bench,has in I Salk. 171, in-settling the nature of conditional contracts, as to precedent conditions, or-whose the obligation to perform by one party, is dependant on the performance of something by another, has clearly and correctly laid down the rules which govern by law in such cases. They are, “that in executory contracts, if the agreement be, that one shall rio’an act, and for the doing théreof, another one shall pay-, &c. the doing of the act, is a condition precedent to the payment; and the party who is to pay, shall not be compelled to part with his money, till the thing be performed lor which he is to pay.” "■But the same case and a train of decisions both in England and America, and in this court, vide Hard. Rep. 511, settle this sound distinction, “that, where the agreement on one side, is the consideration of the agree ment on the other, to do or forbear any thing, there, the parties having trusted to the law to enforce perform- *414 anee, or to give indemnity, cannot justify at law nonperformance, because the other side has not performed.” This rule, and this distinction will no doubt be recognized by this court.
Indeed in the case, cited above, determined by this court, of Hancock vs. Vawter; the court uses these emphatic expressions. “The bargain of every man ought to be performed as he understood it; and if a man will make such an agreement, as to convey his estate, before he has the money to be given him as the price, and will rely on the remedy which he has to recover the money, he ought to perform his agreement.” But on the other hand if his agreement were otherwise, there is no reason why he should be compelled to give credit where he did not intend it. I Lord Ray, 166, cited.
Test the agreement of these parties by these rules. The agreement, dated on the 1st. of May, 1818, states, “that the said Chambers has this day sold to the said Mason the tract or parcel of land he now lives.on, bounded, &c. (describing it) supposed to contain one hundred and ten acres, be the same more or less; for the price of $35per acre; the payments to be made in the following manner, to wit: $300 to be paid in the month of June, and the balance to be paid on the 25th December next, at which time I bind myself, my heirs, &c„ to convey said land to. said Mason, by a deed of general warranty.” And each binds himself to the other for the true performance in the penalty of SB,1001). Ten days after the contract Mason paid $59, and on the 4th of June following he paid $400 to Chambers,, being $150 more than the first payment. He did not pay or tender the balance on the 25th of December, following, as he was bound, nor did Chambers make or tender the conveyance as he was bound. On this state of the case it seems apparent, that both parties stipulated performance unconditionally. It has been decided by this court, that it makes no difference, that the performance of the agreement on both sides was to be^ on the same day, unless actual performance and not the agreement to perform, constituted the consideration. Ill Litt. 293. Chambers brought hi's suit at law for non-payment of the money on the 7th of September, 1819. Mason pleaded to that suit that Chambers had not conveyed. The court below over-ruled the plea; *415 and on an appeal by Mason to ibis court, the judgment of the court below was affirmed.
It was in like manner pleaded by Chambers, when Mason brought an action of covenant against him in the Fayette circuit court, in January, 1821, that he, Mason was not entitled to have and maintain his action, because he had not paid the balance of the purchase money for the land; and upon the courts overruling Chambers’plea also, upon the"ground, that the' covenants were mutual and independant. Mason recovered judgment for the price of the land. This latter judgment stands unrcversed, and is conceived un-reversible; for though it is not asserted, it is believed a supersedeas was applied for by Chambers and refused. But the law of this contract is thus settled and closed by judicial decision. It is not believed that this court, setting as chancellors, can decide thelaw and reverse the decision of atfinferior court, if it should even differ in opinion from it, for which difference, as is conceived is shown, there is no ground here. If these premises and this law be correct, how, the counsel would ask, can it be assumed, as it hás been in the opinion of the court, that-“Chambers was not bound by his contract to convey before the consideration was paid or tendered?” If the answer shall be, that however correct the construction of the contract as contended for by Mason’s counsel, may be at law; yet in equity the position of the court last cited is maintainable. This, the counsel will admit, if- applied when Mason should seek to enforce a specific performance of the contract, upon the principle that he who asks equity must do it. Though a tender and readiness to pay would be sufficient; for however indpendent parties may make their covenants, e ¡uity, without an express agreement to the contrary, always makes mutual performance concurrent. And even where a party has stipulated to convey, sooner than the time fixed for payment of the purchase money, equity would hardly compel a specific performance until the time had arrived for its payment, and its actual payment or a tender, but leave the patty to his remedy at'law. This shows that equity regards the object and end of the contract, when its powers are appealed to for enforcement. And it also proceeds in such cases upon another great principle, which counsel hum- *416 b]y conceive has been wholly overlooked or disregard-* ed in this case. And that is, that where a contract is executory, and the party seeking to enforce if, has done nothing on his part, in part performance of it, equity never will dcoiee a specific performance at his instance. But as he is in stc.lu quo, it will there leave him, and to If s remedy at law. This doctrinéis expiessly recogifzed by this coürtin the care of Bowman vs. Irons, II Bibb, 78-9. For the court there say, ‘"’chancery has acted with caution, where the party can have adequte remedy at law, and have in mosteases refused, to decree a specific execution of executo;y contracts unless the party applying has in some nr asure p-rformed his agreement, so that the rules of the common law, canoi alfl rd complete redress.” What, it may be asked, has Chambers done, in this case, in part performance of his agi cement? If he has done any thing in this way, the counsel have neither scon or heard of it; unless his failure to make the deed on the day he bound himself to make it; his talk some monihs afterwards about his willingness to make the title if his money was paid, with his declaration that he never would make it otherwise than upon its receipt; his use and occupation of the premises, as his own, trom the time the contract was made, upwards of seven years, and untilhis death, and leaving it by his will, to his-children and grand-children after him; and bringing rail at law for his money against Mason; can be considered as part performance.
But the court in the opinion, fur: her assume the the fact, that Chambers was willing to convey, on the day stipulated. It is true the pioof shows, that he declared sometime afterwards, that he was and had been willing to convey on the payment, of his money. If this willingness could he known without any act to evidence it, most persons might be excused for a breach of covenant by shewing ability and subsequent declaration. But this too was pleaded to I, Jason's suit at. law and overruled. The matter of fact is not aiihcuit of discernment with respect to Chamber s, and the motive of his conduct. Whatever willingness he may have either professed or shown, to make a conveyance of the land sold by him to Mason, he neither intended, or was willing to convey until he had the purchase money in his possession. This is the most favorable construction •his acts will bear. But he did not rest upon the r.ecu- *417 rity in retaining both the title and possession of the place only; he pursued Mason at law for his purchase v ii r , , ,r , r , moner. ¿ie recovo -eu judgment, forced Mason to re-plevy it, and still held on to ihe title and possession the place. Liaron is ali this while deprived not only of the use but cut off from the opportunity, which it is proved by I’lournoy, lie had of selling the place, at even a higher price, than he had agreed to give; and from some doubts, which however, not found finally suf* ficient, were not merely colo-able with regard to the goodness of the title, he files his bill to compel the production of tifie and to rescind the contract, with inj’uction, &c.; which bill is dismissed by the inferior court and affirmed on an appeal by him to this court so far as respects the rescisión, but reversed because the court below did not grant him a relief not asked, as to a cred* it for Chambers’ use and occupation of the premises. The court in its opinion now says, “this was in effect, a decree for a specific If this be indeed so, ihe counsel of Mason could never have expected a different result as to the main question in this* case.
The counsel for -Mason however viewing the legal ef” feces of the decision inferred to, in a very different light, beg leave to place befo:e the court, what they conceive to be its legitimate resilt and consquences. A court of chancery often has, and often will, refuse to rescind a contract, the specific performance of which it will not decree. A reía :al to rescind a contract does not therefore nuthouse ihe inference regularly, or technically, that it will decree its performance. It will also decree, under certain circumstances, specific performance, on the applicaii$h 'of a party .not in default against a party who is so, when it would not decree it on the application of the latter. Where both parties have been in default it will neither rescind not decree performance, but leave both to their remedy at law. It will not decree a specific performance, unless the party asking if, comes in reasonable and proper time» St will refuse to decree a specific performance, when thé party asking it, has been in mom, or delay so long, that however well it might have been both asked and donfe formerly such a change of circumstances in the value of the property asked to be decreed to the defendant, *418 has taken place as would canse a loss to him greater than if the complaint had come earlier, and when the parties cannot be placed in statu <,uj, as if perfoimed by both. In the cate of Brashear vs. Gratz, &c., in the supreme court of the United States, VI Wheaton, 523, as to the latter po> i ion, these principles ate established. • “The general rule is that time is not of the essence of a contract of sale of land, and a failure on the part of the seller or of the purchaser, to perform his contract on the stipulated day, docs not of itself, deprive him of .his right to a specific performance, when he is able to comply with his paid of the engagement. But circumstances may be so .changed that the object of the party (defendant) can no longer be accomplished and he can not be placed in the same situation, as if the contract had been performed in due time. In such case a court of equity will leave the parties to their remedy at law.”
Now if these principles are sound and the counsel do not imagine they will not be received as such by this court, what is their influence here? They do most confidently and fearlessly assert, that the decree of this court affirming the decree of the court below, refusing a re-scisión of the contract between these parties, was neither in its form or legal effect a decree for a specific execution of this contract. The counsel know and in common with the community, have but too much reason to regret, that the extrajudicial intimations from the bench, not decisive of the question before it, and sometimes neither necessary or tending to it, have gone abroad,and been quoted sometimes bythebenchitselfas settling points, not ripe for adjudica ion, nor then legally pending. The question of i&cidon and enforcement of a contract in chanceryr have been shown to be distinct. Whatever respect may be had to the reason-ings of any judge they form no part of his decree. All that was in question in the case of the appeal of Mason vs. Chambers, was, should the contract be rescinded or not? The court below said it should not. This court, no matter by what reasoning, concurred with it. It is true this court, unasked by any particular prayer in the bill, and by a sufficiently latitudenous construction of the prayer for injunction, which was solely predicated upon the alleged defect of title in *419 Chambers, did reverse the decree below, because, Mason was entitled to what he had never asked, a credit for the use and occupation of the prem'ses by Chambers; and if he liad mi.de his answer a cross bill, and had stood in an attitude to ask it, no doubt from the reasoning of this court, it would have decreed a specific performance. As he d,d not so stand, this court after a lapse of time which has annihilated nearly half the value of the purchase; during all which time Chambers has had tae use and enjoyment of the property; lay it down that it was nevertheless a decree for specific performance in effect. No title was decreed to he made to Mason which seems to be of the essence of a specific performance as to land. The counsel for mason cannot perceive, that this court having said Ma<on m'ght have a credit for the use andoccu-pa'ion, could by an unknown magic change the legal attitude of the parties and the cause. The latter is very frequently of much importance, and they had hoped forsomeof the legal resul.s from the attitude of both in this case. Mason was certainly not compellable to accept of a credit, for use and occupation, for which he had never a deed, any m >re than he was prohibited from suing at Jaw, which no known or accustomed legal bearing of this decree could hinder. The rule of law, of eq tity, and of reason, is contained in the maxim, quis-quís, rzn-mciari juri,pro $?, sz inlroiucto. Any one may certainly waive a benefit offered hire,, ap'd take in- lieu of it what law will give him. MasonSbJ been called into a court of law by Chambers, in a suit for the purchase money. Had not the court of law thus got possession of the case in the very first movement. Mason afterwards applied to a court of chancery for a rescis-ión. It was refused. Chancery was never regularly asked to decree a specific perfo: manee of this contract, until the LOth of March, 18 i5, about seven years after be was bound to convey by his agreement, and after the foil of nearly one half of the value of the estate purchased. The suit brought by Mason against Chambers for his breach of covenant was not then depending, but judgment had been obtained. S irely a court of law had then got possession of the case. But this court say, Mason should not have resorted to • his suit at law, pending his appeal here, from the decree of the Montgomery circuit court. If two suits are pending *420 for tbe same thing in the same court, between the f ame parties and a rule is given, or plea filed compelling the plaintiff to proceed by only ore, the counsel conceive, a in either suit, would not ibeieforebe void, if £he 0t|ier had been previously dismissed. Now Mason hg,d the privilege to have dismissed his appeal if requl-red, by rule or proper plea in abatement. Me was not so required. His suit by appeal was fruitless, lie look judgment in his suit at law, as counsel do most earnest* ly contend so far as any principle or praciice Is known to chancery or law, he well m:ght. The court in its opinion say that Mason did not fuirly obtain his judgment,if he did, it is admitted, it could not be disturbed. And if he did not the counsel moot readily admit, be ought not to avail any thing by it.
It may be well to ascertain, w"i at is intended in the use of the term unf.irnes>. The counsel for Mason are unable Letter to define it, than as applicable to an act or result pr.. duced by violence or deceit. In legal understanding, they apprehend, a judgment cannot be said to be infected with u>f rirness, when it lias been obtained in thq regular, vnp:rvertzd covrs", of law. What fraud has Mason practised in obtaining this judgment? for an essential component of fraud, is deceit. Has be used any in regard lo the trial? None is pretended by Chambers. \V hat then is the extent of his 'oilence? It is meiely technical, and was wholly contingent, He should have waited to see, whether by his appeal, he could wholly rescind the cont:act. Por no lawyer could dream, that beyond thi~, the sole point in question, any other legal consequence could follow than saying to Mason by the decision, “you ai e bound by the contract, or you are not bound, but are released from ih He takes it in prospect, and calculates upon the decision b. ing had against him. To wit: thathe Is bound by the contract; for every lawyer would have told him there being no prayer for a specific perform* anee on your part, and your adversary not having placed himself in an attitude to ask it, by making his answer a cross bill. You are at liberty regarding the ■ contract as binding, if Chambers has broke Ids cove* nant, to proceed at law. Forif tbe coatiactwere to be specifically enforced by a decree, it must be by a new decree, at the instance of one of the peí fies, *421 Suppose Chambers, as in truth and fact he did, still refused to convey by what process, upon this decree was Mason to compel aim? by none certainly known to hispi esent counsel, and they believe by none known to the law. I'erformanee must ihen be enforced by a new suit in chancery. And it would seem that Chambers in the suit in which Mason was appellant, having been declared to have acted fair and in good conscience; it will not only at that time, but in all time to Qome, however he may continue to hold both the title and,) premises, until diminished to about half their value, enable him to call up Mason and make him take the title and the land, and pay him his moneys when he pleases. The counsel for Mason with every respect for the purity and intelligence of the court, do not think this an overstrained s„ate of the case, as now decided, or its consequences. If Mason is to be made subject in this suit, to a chain of supposed ethics, instead of the well settled rules of chancery and law; against this new ground of procedure, his counsel cannot contend. Nor do they place, or wish to place, the case of any client, with whose interests in court, they may be charged upon such fanciful and uncertain foundations. They believe that this case, if the decision shall stand, will be anomalous. It is at the least, in their conception, an uncommon sketch of the chancellor’s power, not to save from loss, but to make a beneficial speculation effectual for one, who would stand, as he has stood precisely in statu quo and this to the ruin of his adversary, whose only offence has been precisely that of which Chambers was guilty, he not having complied with his contract.
. Testing this contract by every rule applicable to dependent and independent covenants, each parly was bound to perform, whether the other party performed or not; and conceding that Chambers had a lien in equity; it is well settled that a conveyance by Chambers, would not have waived his lien. The breach of contract by Chambers, seems however, to operate no injury to him. Mason’s legal right of action was complete on the 2dth of January, 1818, and it is not pretended this legal right of action was unfairly obtained. When or how did Mason lose this legal right, or how did it become tainted with fraud ? In the opinion delivered *422 the court say’that “the judgment was not fairly obtained against Chambos s.” It is not pre ended that the cause of action was unfairly obtained, and the only unfairness imputed to Mason is that he commenced his action at law, while his suit in equity to rescind the contract waspending; and this is said to have been unfair. With due submission we would beg leave to suggest, that this objection is only ma ter in abatement and not considered as a matter in bar, either at law or in equity, and it is not easy to perceive how it can be fraudulent, or incompatible with a pure conscience.
The act of assembly, I Dig. 228, authorizing the court to apoint a commL-sioner to convey, only relates to defendants who fail to convey by the lime given; and there is no law or precedent for the court to appoint a commissioner to convey for a complainant. Infants cannot convey at all. Chambers’counsel feeling the fo ce of these objection?, have in their brief attempted to get round them by raying that this a ielief given to Mason under his general prayer in his original bill; and that tie court can cause a commissioner to convey for infant defendants.
The answer to this is obvious. Mason’s original bill is not revived against any but Arthur Chambers, the executor who qualified; and the widow and infants are not parties to it. The only attitude they occupy in this cause is the attitude of complainants in the cr oss bill, praying for relief against Ma-on. Could not these infants avoid the deed after they come of age? \V ill a deed made by this commissioner convey any title to Mason? If the deed have not the proper covenants in it, must Mason pay up the price, and begin a new suit in chancery to get a proper deed? It is assigned for error that the damages on the dissolution of the injunction were not liquidated and after the daily reversals on this ground, this en or is ove: looked by' the court. The title of Chambers did not fall by descent to his heirs but passed by devise to some who weie not his heirs, and the irrpgulaiiiy of a revivor by devisees is not noticed by the court.
These errors in the decree, as the counsel of Mason humbly conceive, so palpably erroneous, being entirely unnoticed by the court, strongly attest the fact, that the *423 great weight, multiplicity and variety of the bus!ness of this court, have deprived this cause of that considera ion which was indi. pen: ible to a correct de-cisión of it. The counsel believing that the given on the main question is not well founded either on principle or pi ecedent, as well as the details of the decree, respectfully pray for a rehearing of the whole case.
Response to the petition]